IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

ROBERT INGRAM,
SAMONE INGRAM,

     Plaintiffs,

v.                                                No. 1:25-cv-01184-JDB-jay

ERICA REED,
BRAD TURNER, and
CJ McMORRAN,

     Defendants.

---

ORDER

---

On July 29, 2025, Plaintiffs Robert Ingram and Samone Ingram, proceeding pro se, brought this civil rights action. (Docket Entry [D.E.] 1). In their Complaint, the Ingrams allege that they are the President and CEO of VolCare Health Services, a home health care provider, that had a contractual relationship with the Tennessee Department of Disability and Aging ("DDA"). According to the Ingrams, the DDA unlawfully terminated its contract with VolCare. The Ingrams allege that the termination violated their Constitutional and statutory rights. As defendants, the Ingrams named Brad Turner, who is the DDA Commissioner; CJ McMorran, who is the DDA's Director for West Tennessee; and Erica Reed, who is the DDA's Director of Division of Administrative Appeals.

I.

Summonses were issued for each of the defendants on the same date the complaint was filed. (D.E. 5). On August 14, 2025, the summonses were returned as unexecuted. (D.E. 9). On the second page of each of the three summonses, Robert Ingram wrote that the summonses were

1

returned unexecuted because he incorrectly filled them out (D.E. 9; D.E. 9-1; D.E. 9-2). Later that day, the summonses were reissued. (D.E. 10).

On September 15, 2025, the three summonses were returned as executed. (D.E. 11). All three summonses were addressed to each defendant at the same address. (*Id.*). The returned summonses' "Proof of Service" page was left blank, but a United States Postal Service proof of delivery page was attached to each summons. (*Id.*). According to the Postal Service's proof of delivery information, all three summonses were delivered to a "Front Desk/Reception/Mail Room" at the delivery address and were signed for by "A Frijjell" on September 8, 2025. (*Id.*).

Exactly one week later, the Ingrams filed two documents: a copy of a United States Postal Service receipt indicating that on August 18, 2025, three first class pieces of mail were sent via certified mail return receipt requested with tracking numbers for each piece of mail (*see* D.E. 12-1); and a letter from Assistant Attorney General Andrew Grams of the Tennessee Attorney General's Office dated August 27, 2025. (D.E. 12). Assistant Attorney General Grams's letter states:

> This Office is aware that you have filed the above-referenced lawsuit. Service of process, however, has not been completed in compliance with the Federal Rules of Civil Procedure. Please be advised that the Defendants will not respond to the lawsuit until service has been perfected.

(D.E. 12).

On September 30, 2025, the Ingrams moved for entry of default. (D.E. 13). In their motion, the Ingrams requested that the Clerk of the Court enter default against the defendants because they were alleged to have been served on September 8, 2025, and their deadline to respond to the Ingrams' Complaint was September 29, 2025. (*Id.*). Because defendants had not filed a response on or before September 29, 2025, the Ingrams contended that they were in default. (*Id.*). The next day, October 1, 2025, the Clerk of the Court denied the motion of entry of default, finding that

2

"[t]here is no proof service has been perfected as to, Erica Reed, Brad Turner, and CJ McMorran, the defendants listed in this case." (D.E. 14).

On the same day that the Clerk denied the Ingrams' motion for entry of default, the Ingrams filed a "Motion of Perfected Service." (D.E. 15). In that filing, the Ingrams state that they served the DDA Commissioner on September 8, 2025, with summons and complaint by certified mail, return receipt requested. (*Id.* at ¶ 1). They further state that the certified mail was accepted by Ashley Williams, who they allege is an Executive Assistant to the DDA Commissioner. (*Id.* at ¶ 2). In support of their filing, the Ingrams attached a printout of Ashley Williams' LinkedIn profile and a copy of the return receipt "green card" that bears an Ashley Williams signature. (*Id.* at ¶¶ 3-4, D.E. 15-1). The Ingrams cite Rule 4.04(6) of the Tennessee Rules of Civil Procedure and state that the Rule provides that "service upon the State of Tennessee is valid if delivered to the Attorney General or 'to any agent authorized by appointment or by law to receive service of behalf of the state." (D.E. 15 at ¶ 5). They submit that Ashley Williams "is such an authorized agent. Her role requires accepting and managing official correspondence for the Commissioner." (*Id.*). For those reasons, the Ingrams state that they have perfected service on the defendants.

The Ingrams also filed a "Motion to Confirm Perfected Service" on that same date. (D.E. 16). In this motion, the Ingrams contend that they served Defendant Brad Turner, the DDA Commissioner, on September 8, 2025, in the same manner as described in their Motion of Perfected Service. In the Motion to Confirm Perfected Service, the Ingrams cite Rule 4(j)(2) of the Federal Rules of Civil Procedure. (*Id.* at ¶ 3). They posit that they served Defendant Turner, and that the Attorney General of the State of Tennessee was aware of the lawsuit evidenced by the letter dated August 27, 2026, from Assistant Attorney General Grams. (*Id.*). As such, according to the Ingrams, service had been perfected.

II.

It is well settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Phillips v. Lee*, No. 2:24-cv-02265-MSN-tmp, 2025 WL 2200746, at *1 (W.D. Tenn. Aug. 1, 2025) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, (1989)). Because an official capacity suit is against the state entity, service of a defendant sued in his or her official capacity must be made under Federal Rule of Civil Procedure 4(j). *Id.* Rule 4(j)(2) governs service on "[a] state, municipal corporation, or any other state-created governmental organization." Fed. R. Civ. P. 4(j)(2). The Rule provides two methods for proper service: "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2)(A)–(B). Tennessee state law provides that "service shall be made . . . [u]pon the state of Tennessee or any agency thereof, by delivering a copy of the summons and of the complaint to the attorney general of the state or to any assistant attorney general." Tenn. R. Civ. P. 4.04. In this case, that means that the Ingrams were required to serve either the chief executive officer of the State of Tennessee or follow Tennessee law for serving a summons and complaint upon a state agency by delivering it to the attorney general or an assistant attorney general. *See* Fed. R. Civ. P. 4(j)(2)(A)–(B); Tenn. R. Civ. P. 4.04(6).

The Ingrams have not perfected service in accordance with Rule 4 of the Federal Rules of Civil Procedure. They name only state officials in their official capacities as defendants, which requires compliance with Rule 4(j)(2). *See Will*, 491 U.S. at 71. The Rule mandates that service be made either by delivering a copy of the summons and complaint to the state's chief executive officer or by serving the state in the manner prescribed by state law. Fed. R. Civ. P. 4(j)(2). "The

chief executive officer of Tennessee for purposes of service is the governor[.]" *Robinson v. Tennessee Highway Patrol*, No. 1:16-cv-01296-JDB-egb, 2017 WL 3234390, at *2 (W.D. Tenn. July 31, 2017). Here, the Ingrams make no claim that they personally served the governor, so they must show that he accomplished service in accordance with Tennessee law. *See Fed. R. Civ. P. 4(j)(2); Trawick v. Eller*, No. 3:24-CV-212-DCLC-DCP, 2024 WL 4906065, at *2, (E.D. Tenn. Nov. 27, 2024).

Under Tennessee law, the Ingrams' attempt to serve Defendants in their official capacities directly by certified mail was improper. While service by certified mail is authorized under Tennessee law, the mail must be addressed to the appropriate individual. Tenn. R. Civ. P. 4.04(10). Further, the return receipt must show "personal acceptance by the defendant or by persons designated by Rule 4.04 or statute." *Id.* Here, the Ingrams needed to serve "the attorney general of the state" or "any assistant attorney general." *See* Tenn. R. Civ. P. 4.04(6). Instead of complying with either permissible method, the Ingrams mailed the summons and complaint directly to the named state officials, where the documents were signed for by an individual who lacks the authority to accept service of process on behalf of the Defendants. It is also noteworthy that there appears to be different individuals who are alleged to have signed for the certified mail. In the returned summonses the Ingrams filed on September 15, 2025, each summons is accompanied by USPS proof of delivery information stating that "A Frijjell" signed for the summonses on September 8, 2025. (*See* D.E. 11). In their Motion of Perfected Service, the Ingrams submit a return receipt "green card" bearing the signature of Ashley Williams who they, without citation to any statutory authority, contend is authorized to accept service of process. (*See* D.E. 15).

Finally, in addition to not complying with Rule 4(j) of the Federal Rules of Civil Procedure, the Ingrams also failed to comply with Rule 4(l). Rule 4(l)(1) of the Federal Rules of Civil

Procedure states that, "[u]nless service is waived, proof of service must be made to the court" by means of the "server's affidavit" unless service is effectuated by a United States marshal or deputy marshal. Here, in the summonses the Ingrams returned as executed, no server's affidavit was provided for any of the summonses. (D.E. 11).

III.

For these reasons, the Court finds that service has not been perfected in this matter and the relief the Ingrams seek in their Motion of Perfected Service and Motion to Confirm Perfected Services (D.E. 15, 16) is DENIED. The Ingrams are hereby ORDERED as follows:

1. Within 21 days of the date of entry of this Order, the Ingrams shall have the Clerk reissue summonses;

2. Within 45 days for the date of reissuance of the summonses, the Ingrams shall serve those summonses in a manner consistent with Rule 4(j) of the Federal Rules of Civil Procedure as discussed in this Order; and

3. Within 14 days of serving the summonses, the Ingrams shall file proof of service as directed by Rule 4(l) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED, this the 20th day of July 2026.

**s/Jon A. York**
UNITED STATES MAGISTRATE JUDGE

**IF DESIRED, AN APPEAL OF THIS ORDER TO THE PRESIDING DISTRICT COURT JUDGE MUST BE FILED WITHIN FOURTEEN (14) DAYS OF THE SERVICE OF A COPY OF THIS ORDER. *SEE* 28 U.S.C. § 636(b)(1)(C); LOCAL RULE 72(g)(2). FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**